THE PEOPLE *v.* CALDERÓN.

APPEAL from the District Court of San Juan, Section 2.

No. 426.—Decided June 24, 1912.

CRIMINAL LAW—EMBEZZLEMENT—CONTRADICTORY EVIDENCE—APPEAL.—In cases of contradictory evidence the weight given to it by the trial court will be accepted by this court unless it is shown that the court was influenced by passion, prejudice, or partiality, or that manifest error was committed.

ID.—EMBEZZLEMENT—ELEMENTS OF EMBEZZLEMENT.—The existence of the following elements must be established to show that the crime of embezzlement has been committed:

    1. A specific property constituting the *corpus delicti.*

    2. That such property was entrusted to another person in some one of the forms specified in sections 446 to 450 of the Penal Code.

    3. That such other party fraudulently appropriated the property.

ID.—FRAUDULENT INTENT—BORROWED PROPERTY.—A person who borrows a saddle and trappings on condition that he will return the same the next day and instead of doing so sells them and appropriates the proceeds shows the fraudulent intention which he had when he committed the act.

ID.—MISDEMEANOR—VALUE OF PROPERTY EMBEZZLED—DEFECTIVE COMPLAINT—APPEAL.—Although the complaint in this case is defective because the value of the property constituting the *corpus delicti* is not stated therein, such defect cannot be deemed fundamental nor serve as ground for the reversal of the judgment on appeal because the case was prosecuted from the commencement thereof as a misdemeanor and the value of the aforesaid property was clearly established at the trial as less than $50, and because it has not been shown that the defendant was prejudiced thereby in the slightest degree.

The facts are stated in the opinion.

*Mr. Adrián Agosto* for appellant.

*Mr. Charles E. Foote, Fiscal,* for respondent.

MR. JUSTICE DEL TORO delivered the opinion of the court.

The complaint in this case, sworn to before the justice of

the peace of Toa Alta on October 27, 1911, in the pertinent portion thereof reads as follows:

"That in the *barrio* called 'Galeteos,' of the judicial district of the peace court of Toa Alta, which is contained in the municipal judicial district of Bayamón, at 11 .a. m., on October 15, 1911, the aforesaid defendant (Elías Calderón) voluntarily, maliciously, and criminally, and with fraudulent intent disposed of trappings composed of a bridle, sweat-pad, and saddle, which I had loaned him for the purpose of going from my house to town."

At the trial, which was held in the district court on December 26, 1911, the following persons testified for the prosecution: 1. The complainant, Norberto Rosado, who, among other statements, made the following: "That the defendant called at his house and said, 'Lend me the saddle, bridle, and sweat-pad, that I may go to town, and to-morrow I will return them to you,' and at the time that this trial was held in Toa Alta he had not yet returned them; that the defendant borrowed and kept the saddle, bridle, and sweat-pad; that they made a settlement, and the defendant then said to him, 'I am going to pay you in money'; that he said this on the 16th of this month, and that defendant paid him." 2. Eusebio Rodríguez, who in the pertinent portion of his testimony, said: "That the defendant addressed Norberto in this manner: 'Lend me the bridle, saddle, and sweat-pad. I will return them to you to-morrow morning'; that he does not know whether Norberto recovered the saddle and sweat-pad." 3. Pablo Pérez, who said, "That in the afternoon the defendant said to Norberto, 'See if you can lend me the bridle, saddle, and sweat-pad, that I may go to town, and I will return them to you to-morrow morning." The defendant, only, testified for the defense. His testimony was as follows: "That what took place with respect to the saddle and sweat-pad was that he arrived at the house of Norberto and bought a mare of him for the sum of $27, and as he bought such mare without trappings and it was raining, as he was about to re-

turn to town he said to Norberto, 'Sell me that saddle,' to which he replied, 'I do not desire to sell it, but if you will give me what I ask for it I'll sell it to you; that Norberto offered it to him, with the bridle and all, for $5; that he took it away upon condition that if it should suit him he would give him the $5; that he took the saddle away and sold it, and sent word to Norberto to call for the proceeds thereof, and that on the same day he filed his complaint, but notwithstanding this the defendant paid Norberto for the saddle.''

With the complaint and the foregoing evidence as grounds the district judge found Elías Calderón guilty of the crime of embezzlement and sentenced him to two months' imprisonment, and costs. From this sentence, pronounced on December 26, 1911, the present appeal was taken.

The appellant maintains that the evidence has only established the existence of a loan for use (*commodatum*), and the *fiscal* holds that the evidence establishes the existence of a true case of embezzlement.

The evidence is contradictory. The testimony of the witnesses for the prosecution tends to show that the objects referred to in the complaint were delivered to the defendant subject to their return the next day, and that the defendant never did return them but paid the prejudiced party for them after such party had filed a complaint against him.

The testimony of the witness for the defense tends to establish that the objects were sold by the complainant to the defendant, and that the latter informed the former that the value thereof was at his disposal and that he finally paid such price. The trial court decided the conflict in the evidence in favor of the witnesses for the prosecution, and the estimate of the evidence should be accepted as just and proper considering the circumstances of the case and in accordance with the jurisprudence repeatedly applied by this court.

The crime of embezzlement is defined and punished in sections 445 to 455, Chapter VI, Title XVII, of our Penal Code. It is a crime against property, and the legislator makes

it consist, generally, of the fraudulent withdrawal or appropriation of property by a person to whom the same had been entrusted.

It is not a case, therefore, of the appropriation of another's property without the consent and the knowledge of the owner or by means of violence or by virtue of false and fraudulent simulations. In this case the property is delivered to another person in whose honesty trust is placed, with the knowledge and consent of the owner, or of his legal representative, and this other person, taking advantage of the confidence placed in him, fraudulently appropriates the property.

The Supreme Court of the United States, in the case of *Moore* v. *United States,* 160 U. S., 268, said:

"Embezzlement is the fraudulent appropriation of property by a person to whom it has been entrusted, or into whose hands it has lawfully come; and it differs from larceny in the fact that the original taking of the property was lawful, or with the consent of the owner, while, in larceny, the felonious intent must have existed at the time of the taking."

In order to consider that the crime of embezzlement has been committed, it is necessary to establish the existence of the following elements: (1) A definite property constituting the *corpus delicti;* (2) that such property was entrusted to another person in some one of the forms specified in sections 446 to 450 of the Penal Code; and (3) that such other person fraudulently appropriated the property.

The existence of the first element is clearly established in this case. The trappings referred to in the complaint and in the evidence, consisting of a saddle, a bridle, and a sweat-pad, constitute the *corpus delicti.*

So, also, is the existence of the second element established. To "entrust" is "to deliver in trust," "to confide to the care of," "to commit to another with confidence in his fidelity." *Smith* v. *Marden,* 60 N. H., 509, 510; 4 Words and Phrases, 3746. And in the present case Norberto Rosado, the owner

of the trappings, delivered them to the defendant to be used by him and returned the next day, and if he acted thus it was because he trusted him; because he believed in his fidelity. The defendant may properly be considered as a bailee, and the act committed by him, if we may conclude that the existence of the third element is also established, falls within the provisions of section 449 in connection with 445, both of the Penal Code:

"A master may deliver property to his servant under such circumstances as to give him the possession, and not merely the custody, as where he lends him a horse or other property to use in his own business; and in such a case the servant, if he fraudulently converts the property to his own use, is guilty, not of larceny, but of embezzlement, like any other bailee. Clark and Marshall, The Law of Crimes, p. 788.

Let us investigate the existence of the third element. Did the defendant act fraudulently?

The word "fraudulently," as used in an indictment charging that the defendant did fraudulently embezzle and convert to his own use a certain sum of money, qualifies the words "embezzled" and "converted," and is descriptive of the motive with which the act is done. *State* v. *Jamison,* 38 N. W., 508, 509; 74 Iowa, 602; 3 Words and Phrases, 2956.

In the present case it has been shown that the defendant requested the loan of the trappings subject to their return the next day, and that the owner thereof had confidence in him and actually loaned them to him. It was the duty of the defendant to return the property to the owner thereof. And what did he do? He himself testifies that he sold it—that is, that he converted the same to his own use. He had no authority to do so; he could not do so without breaking his promise, and when he tried to explain the act done by him he alleged a fact, that of the purchase, which was in conflict with the truth, as has been proven by the *fiscal's* witnesses, to whom, as above said, the trial court gave full credit. The property was

another person's and upon selling it and appropriating the proceeds thereof the defendant committed an offense defined and punished by our Penal Code. His fraudulent intention may be presumed from the manner and deliberation with which the unlawful act was committed for the purpose of injuring another. Section 12 of the Penal Code.

In an additional brief filed by the attorney for the defendant it is maintained that the value of the trappings not being specified in the complaint the municipal court, which originally heard the case, as well as the district court, which heard the appeal, acted without jurisdiction, and to uphold such theory the decisions of this Supreme Court in *The People* v. *Alomar,* 10 P. R. R., 282, and in *The People* v. *Alfonso,* 14 P. R. R., 772, have been quoted.

We have carefully examined both cases, and although they refer to cases of embezzlement and establish in accordance with law that the value of the property constituting the *corpus delicti* determines the classification of the offense as a felony or a misdemeanor, they do not solve the specific question appearing herein.

What the property delivered to the defendant consisted of was clearly stated in the complaint, and it was alleged therein that such defendant voluntarily, maliciously, and criminally and with fraudulent intent disposed thereof. The defendant was notified with full precision of the charge filed against him. The terms of the complaint could not mislead him, and were sufficient for the preparation of his defense.

A riding saddle, a sweat-pad, and a bridle are objects which may be worth more or less, but which always have some value. It does not appear that the defendant demurred to the complaint in the lower courts, and at the trial he himself testified that Norberto had offered to sell him the saddle, with the other articles, for $5; that he took it on condition that if it should suit him he would pay Norberto the $5; that he sold it and that he finally delivered the proceeds to Norberto.

It was essential to fix the value in order to determine

whether the offense with which the defendant was charged was a misdemeanor or a felony, and, in truth, the complaint would have been more complete if the value of the trappings had been stated therein.

But it is a certainty that this case was, from the first moment, prosecuted as a misdemeanor; that a complaint and not an information was filed; that it was originally tried in the municipal court and later, on appeal, in the district court; that the value of the property constituting the *corpus delicti* was clearly determined by the evidence to be less than $50; that the punishment inflicted on the defendant is within the limits fixed in cases of misdemeanor; that it has not been shown that the defendant suffered the least harm from the omission of a statement of the value of the property, and that in virtue thereof the defect that may have existed in the complaint cannot be considered as a fundamental error, and serve as a ground to reverse the sentence.

The appeal should be denied and the judgment appealed from, affirmed.

*Affirmed.*

Chief Justice Hernández and Justices MacLeary and Aldrey concurred.

Mr. Justice Wolf dissented.

### DISSENTING OPINION OF MR. JUSTICE WOLF.

In this case there was evidence of other transactions between the defendant and the prosecuting witness. There was evidence, also, that there had been a sale by the prosecuting witness to Calderón of a horse. It is true that the prosecuting witness testified that Calderón borrowed a saddle and other things, which he is accused of embezzling, but the testimony is a bit vague. The whole circumstances of the case do not exclude the idea that Calderón may have thought that he also had the right to retain the saddle and pay for

it thereafter. The intention to convert to his own use without in any way recompensing the prosecuting witness is not satisfactorily established, to my mind. In the absence of proof beyond a reasonable doubt of the criminal intention, the defendant ought not to have been convicted. Some of the cases bearing upon this question are as follows: *McElroy* v. *The People,* 202 Ill., 478-479; *State* v. *Marco,* 32 Ore., 177; *State* v. *Littschke,* 27 Ore., 193.

The intent not having been satisfactorily proved, I feel compelled to dissent.